BLOCH-DANEMAN COMPANY, Respondent, vs. J. MANDEL-KER & SON, INC., Appellant.

*October 12—November 10, 1931.*

642

For the appellant there was a brief by *Churchill, Bennett, Churchill & Davis* of Milwaukee, and oral argument by *W. H. Churchill.*

*Armand J. Tuteur* of Milwaukee, for the respondent.

ROSENBERRY, C. J.   The complaint alleges the corporate capacity of J. Mandelker & Sons, Inc., upon information and belief.   It likewise alleges upon information and belief that the plaintiff began an attachment proceeding, and alleges upon information and belief that the certificate or certificates of stock representing the shares are in the possession of Martin Mandelker or the defendant corporation.   These allegations are attacked upon demurrer as insufficient.   We are cited to *Mills v. Jefferson,* 20 Wis. *50, p. 54; *Sweet v. Davis,* 90 Wis. 409, 63 N. W. 1047; *Winterfield v. Cream City Brewing Co.* 96 Wis. 239, 71 N. W. 101, and other

cases in support of this contention. It is said in *Steinberg v. Saltzman*, 130 Wis. 419, 110 N. W. 198:

"The allegations of the complaint on information and belief challenging the validity of appellants' title upon the ground that no license to sell the realty was granted, it is insisted, are not sufficient to raise such question. That seems to be ruled in appellants' favor by *Union L. Co. v. Chippewa County*, 47 Wis. 245, 2 N. W. 281." (Other cases cited.)

The allegation there in question related to the existence of a license to sell real estate. It is quite apparent that the statement there made was not carefully considered. The cases cited all relate to the character of the allegations in an answer sufficient to raise an issue requiring the plaintiff to produce proof. There is a wide distinction between allegations in the complaint sufficient to admit evidence upon the matters alleged and the sufficiency of the allegations in an answer to raise an issue with respect to facts alleged in the plaintiff's complaint. See 21 Ruling Case Law, p. 457, § 22, and cases cited.

While the complaint is far from a model pleading, it is not subject to attack by demurrer. The pleader should state facts within his knowledge positively and not upon information and belief. If he does not do so, while the allegation may be sufficient to admit the proof, the burden cast upon the opposite party who is called upon to admit or deny is quite different.

The defendant Martin Mandelker was not served and made no appearance. The demurrer was on behalf of the defendant corporation and it appeals from the order granting the temporary injunction. The action was originally brought against the defendant Martin Mandelker alone and a writ of attachment was issued. The sheriff made a return to the effect that the defendant could not be found; that he had attached the shares of stock owned and held by the defendant in J. Mandelker & Son, Inc., by delivering to and leaving with its secretary a copy of the writ of attachment and de-

manded a certificate showing the number of shares owned by the defendant; and that he received a certificate signed by the secretary showing that the defendant was the holder of record of 112½ shares. The outstanding certificate or certificates representing such shares were not, however, seized by the officer. Thereupon the summons and complaint were amended by making the corporation a party defendant, and upon motion a temporary injunction was granted as to the defendant corporation. The temporary injunction, which was continued in force by the order appealed from, enjoined and restrained the defendant company from permitting the transfer, assignment, or incumbering of the shares of stock upon the books of the company or delivering to the assignee or transferee any new certificates of stock representing the shares so owned by the defendant Martin Mandelker, and provided that if the said shares are surrendered to the defendant corporation it hold said shares until the further order of the court. The temporary injunction also sought to restrain Martin Mandelker in certain respects not material here because he was not served and has not appeared, and it also restrained the defendant company from paying any dividend upon the shares of stock to the said Martin Mandelker without order and direction of the court.

The injunctional order is attacked upon the ground that it is contrary to the provisions of sec. 272.27 (2), Stats., which is as follows:

"Sec. 272.27   *Levy upon corporate stock.* . . .

"(2) . . . provided, however, that no attachment or levy upon shares of stock for which a certificate is outstanding shall be valid until such certificate be actually seized by the officer making the attachment or levy, or be surrendered to the corporation which issued it, or its transfer by the holder be enjoined. Except where a certificate is lost or destroyed, such corporation shall not be compelled to issue a new certificate for the stock until the old certificate is surrendered to it." (From Uniform Stock Transfer Act.)

It is argued on behalf of the plaintiff that the seizure of the certificate is not a condition precedent to the making of the attachment but may follow it. It is considered that this position is not tenable. The section was construed in *Harbridge v. American Nat. Bank,* 177 Wis. 206, 187 N. W. 853. It is quite apparent that the purpose and object of the provisions of the Uniform Stock Transfer Act were to make certificates of stock negotiable and to invest the certificates themselves with many of the incidents of tangible personal property. The provisions of sub. (2) relate to the enjoining of the transfer by the holder. This limitation is no doubt intended to prevent a blanket injunction restraining the corporation from making any transfer of the certificates upon its books such as was issued in this case. If it is not so held, the status of shares remains as it was before the passage of the act. There are many circumstances in which an injunction restraining the holder from a transfer would be effective although the officer might not be able to impound the certificate, but as was said in *Harbridge v. American Nat. Bank, supra,* that was a matter for the legislature.

It is also sought to sustain the injunction on the ground that the complaint contains allegations in the alternative that the stock is in the possession of the defendant company. If the stock had been in the possession of the defendant company by reason of the relation of the company to the defendant stockholder, the attachment would have been effective. If it had been in its possession by reason of a prior transfer to a third party who seeks transfer upon the books, to which under the statute he would be clearly entitled, then the attachment would not have been effective because the title had passed from the holder. So in any event the plaintiff is not entitled under the statute to an injunction against the company.

The stock could have been impounded in one of the three ways provided in the statute: (1st) by the actual seizure; (2d) by the surrender of the certificate to the corporation

which issued it, or (3d) its transfer by the holder be enjoined. Unless it is impounded in one of these ways specified in the statute, sub. (2) provides explicitly that the attachment shall not be valid. If the procedure followed in this case is upheld, then there is a fourth way. It is considered that to so hold would be a clear amendment of the statute by judicial decision.

It is argued that if the statute be so construed it results in making stock of a Wisconsin corporation owned by a resident of the state subject to attachment while the stock of the same corporation held and owned by a person in another state cannot be attached. It is perhaps a sufficient answer to this to say that the same is true of other kinds of personal property. It must be attached if at all where found. It is true that prior to the enactment of the Uniform Stock Transfer Act it was held that shares of stock in a corporation are personal property, the location of which is in the state where the corporation is created and is there subject to attachment. 2 Cook, Corporations (8th ed.) § 485 and cases cited. The cases, however, arose under the law as it stood prior to the adoption of the Uniform Stock Transfer Act. While the question was not directly involved in the case of *Estate of Shepard,* 184 Wis. 88, 197 N. W. 344, the doctrine of that case supports the conclusion we have reached in this case.

That it was the intention of the framers of the Uniform Stock Transfer Act to make the method of transferring shares effective without regard to transfer upon the books of the company is indicated by the last provision of sec. 1 (183.01 (2), Stats.), which provides that the section shall apply although the charter or articles of incorporation or code of regulations or by-laws of the corporation issuing the certificate and the certificate itself provide that the shares represented thereby shall be transferable only on the books of the corporation. See *Klein v. Wilson & Co. Inc.*[3] (1924) 7 Fed. (2d) 769; *Desmond v. Pierce* (1925) 185 Wis. 479, 201 N. W. 742.

In *Stone v. Wis. Tax Comm.* 197 Wis. 71, 221 N. W. 376, it was pointed out that while there is plenty of authority for the proposition that shares of stock in a corporation are personal property, whose location is in the state where the corporation is created, it has always been held that for purposes of taxation the situs of such shares is the domicile of the owner. It is equally true that under the Uniform Stock Transfer Act the stock of a Wisconsin corporation is transferable in the manner prescribed in that act and that it was the purpose of the act to prevent attachment of stock which might belong to a person not within the jurisdiction of the court, in order to increase its negotiability as well as its marketability. If this results in some apparent discrimination against the citizens of this state as owners of stock of corporations organized in other states having the Uniform Stock Transfer Act, they enjoy an equal benefit.

*By the Court.*—The orders appealed from are reversed, and cause remanded with directions to sustain the demurrer and dissolve the injunction.