NORMAN C. ANDERSON, Chairman, Assembly Organization Committee
You have asked me to respond to the position taken by the Wisconsin Chiropractic Association that ch. 119, Laws of 1975, which, inter alia, created sec. 146.309, Stats., changed existing law relative to the rights of patients in nursing homes as to their freedom of choice of health care providers under the Medicaid program. The association asserts that this right is being curtailed by an interpretation of the Wisconsin Administrative Code requiring the approval of the attending physician of such patient as a condition to the use of the services of other health providers such as dentists, optometrists, podiatrists or chiropractors.
The matters asserted in the association's letter of August 3, 1976, which I will assume to be true for purposes of this opinion, may be summarized as follows:
Rule H 32.07 (2) (a) of the Wisconsin Administrative Code, as currently interpreted and enforced by the department, embraces a concept set forth in a position paper prepared by the Nursing *Page 179 
Home Advisory Council in 1975 called "Total Medical Management — Single Point Accountability." This concept is "one in which the attending physician of a nursing home patient is both entitled and required to have prior knowledge of any medically significant actions contemplated for, to, or with that patient, and the authority to restrict such actions to those which are consistent with his professional evaluation of the patient's medical needs." This concept requires nursing home residents to obtain the approval of a licensed physician before receiving treatment from an alternate health care provider. It is further suggested that there is a possible reluctance on the part of physicians to authorize treatment provided by chiropractors.
There can be little question that administrative policy which conflicts with statutory authority is invalid. Administrative agencies have only such powers as are expressly granted to them or necessarily implied, and any power sought to be exercised must be found within the four corners of the statute under which the agency proceeds. American Brass Co. v. State Board of Health
(1944), 245 Wis. 440, 448, 15 N.W.2d 27; Kindy v. Hayes (1969),44 Wis.2d 301, 307, 171 N.W.2d 324.
The basic question, then, is whether the asserted practice and policy of the Department of Health and Social Services is in harmony with the statutory provisions embraced by ch. 119, Laws of 1975, commonly referred to as the patient's bill of rights.
Freedom to contract is a constitutional guarantee. Art. I, sec.12, Wis. Const. Like other fundamental rights, it is not absolute, but rather is subject to the exercise of the police power of the state. 38 OAG 305 (1949). Thus, a person cannot contract for nursing home care under the Medicaid program without observing public policy set forth by the Congress in 42 U.S.C. secs. 1395x(j) and 1396 (a)(28) and by the Wisconsin Legislature. Sections 49.46 (2) (a) 7 and 49.45 (11) (c), Stats., provide that admission to a skilled care nursing home requires the prescription of either a doctor of medicine or osteopathy.
Once a person is properly admitted to a nursing home, the question arises as to what rights he has as a resident thereof. The legislature has made it very clear that residents of nursing homes are entitled to the full exercise of the freedom of choice provisions guaranteed medical assistance recipients provided under sec. 49.45 (9), Stats. See 59 OAG 68 (1970). *Page 180 
Section 146.309 (1), Stats., provides in part:
 "Every resident in a nursing home, adult group foster home or residential care institution shall, except as provided in sub. (5), have the right to:
"***
 "(m) Use the licensed, certified or registered provider of health care and pharmacist of his choice.
"***
 "(n) Be fully informed of his treatment and care and participate in the planning of his treatment and care."
Section 146.309 (6) (b), Stats., provides:
 "Allegations of violations of such rights by persons licensed, certified or registered under chs. 441, 446 to 450, 455 and 456 of the statutes shall be promptly reported by the facility to the appropriate licensing or examining board and to the person against whom the allegation has been made. Any employe of the facility and any person licensed, certified or registered under chs. 441, 446 to 450, 455 and 456 of the statutes may also report such allegations to the board. Such board may make further investigation and take such disciplinary action, within the board's statutory authority, as the case requires."
It appears from the foregoing provisions that a resident of a nursing home is entitled to use a licensed provider of health care in accordance with his desires just as if he were in a private living situation. Thus, as such persons visit a dentist, optometrist, podiatrist, or a chiropractor without first seeking the advice or permission of a doctor of medicine or osteopathy, the resident of a nursing home should be able to call upon such practitioners to meet his or her health needs without first securing the approval of his or her attending physician.
The foregoing view represents a change from the asserted practice heretofore in effect with respect to patient medical care in a nursing home. Rule H 32.07 (2) (a) of the Wisconsin Administrative Code provides: *Page 181 
 "The nursing home shall have a requirement that the health care of every patient, whether or not admitted from a hospital, shall be under the supervision of a physician licensed to practice in Wisconsin who, based on an evaluation of patient immediate and long-term need, prescribes a planned regimen of medical care which covers those applicable patient requirements, such as indicated medications, treatments, restorative services, diet, special procedures recommended for the health and safety of the patient, activities and plans for continuing care and discharge."
Under this rule the attending physician may have stood as a buffer between the nursing home patient and all others licensed to treat the sick.
I am of the opinion that Rule H 32.07 (2) (a), Wis. Adm. Code, on its face, does not directly conflict with sec. 146.309 (1) (m), Stats. The section can be interpreted in harmony with the statute by guaranteeing that nursing home patients have the freedom of choice contemplated by statute.
The Wisconsin Chiropractic Association, however, asserts that the effect of the rule, as written, is to preclude such freedom of choice. It is my opinion that if the practices under Rule H 32.07 (2) (a) outlined by the Wisconsin Chiropractic Association occur in such a manner as to deprive patients of their freedom of choice of health care providers, such practices contravene the rights of nursing home residents as guaranteed by ch. 119, Laws of 1975. Such practices must give way to the mandate of the legislature.
It is the function of the legislature, rather than an administrative agency, to determine and define public policy of the state. Department of Revenue v. Nagel-Hart, Inc. (1975),70 Wis.2d 224, 228, 234 N.W.2d 350.
While the Medicaid program is a cooperative one involving a federal-state relationship, we find no federal statute or regulation which specifically gives absolute control to the attending physician with respect to the use of other licensed health care providers merely because the patient is a resident of a nursing home. It is true that under sec. 49.45 (3) (d), Stats., a nursing home must have in operation a utilization review program which meets federal requirements, yet it is to be noted that 42 U.S.C. sec. 1395x (h) provides: *Page 182 
 "A utilization review plan of a . . . skilled nursing facility shall be considered sufficient if it is applicable to services furnished by the institution . . . ." (Emphasis supplied.)
Utilization statutes cannot be interpreted to vest absolute control of other licensed providers in the attending physician.
The specific question of the association has now been answered. Other questions raised on general departmental authority in the nursing home field and on constitutional implications of the patient bill of rights cannot be considered in a factual vacuum and consideration of these issues are deferred until presented with specific facts and issues to consider.
BCL:WLJ